**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

D.W. by her parent, D.M.;
D.M. individually and on behalf of D.W.;
E.V. by his parent, S.V.;
S.V. individually and on behalf of E.V.;
K.W.H. by his parent K.M.S.H.;
K.M.S.H. individually and on behalf of K.W.H.;

on behalf of themselves and all others similarly
situated,

               Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF
EDUCATION; DAVID C. BANKS, in his official
capacity as Chancellor of the New York City
Department of Education,

               Defendants.

Case No. 23-3179

**CLASS ACTION COMPLAINT**
**FOR DECLARATORY AND**
**INJUNCTIVE RELIEF**

## NATURE OF THE ACTION

1.     This class action is brought by Plaintiffs D.W., D.M., E.V., S.V., K.W.H., and

K.M.S.H. on behalf of themselves and all others similarly situated against Defendants New York

City Department of Education ("NYCDOE") and Chancellor David C. Banks ("Banks") in his

official capacity (jointly, "Defendants"), to remedy Defendants' systemic failures to comply with

their contractual, statutory, and regulatory obligations to timely provide, and ensure the provision

of, special education services to Plaintiffs and other families in the New York City public school

system.

2.     Students with disabilities face unacceptably long delays in obtaining necessary

evaluations, which exacerbates their underlying disabilities and eliminates any chance of

educational progress.  Consequently, Defendants' failures deprive thousands of New York City students with disabilities of their right to a free and appropriate public education ("FAPE") under federal and New York State law.

3.      Since at least 2018, Defendants' egregious delays in (i) providing special education evaluations directly to students ("NYCDOE Evaluations") and in (ii) responding to requests for independent educational evaluations ("IEEs"),[1] have deprived Plaintiffs and putative class members of the special education and related services to which they are legally entitled.

4.      These evaluation delays cause irreparable harm as the inappropriate classification of students with disabilities, or placing these students in non-suitable classrooms and programs can undercut their educational and developmental progress.  *See, e.g.,* Mary A. Lynch, *Who Should Hear the Voices of Children with Disabilities: Proposed Changes in Due Process in New York's Special Education System*, 55 ALB. L. REV. 179, 186-87 (1991) ("… Children with learning disabilities ***need early intervention*** before their before their needs become compounded by frustration and emotional difficulties arising from the learning problem.") (emphasis added); *see also* Rosemary Queenan, *Delay & Irreparable Harm: A Study of Exhaustion Through the Lens of the IDEA*, 99 N.C. L. REV. 985 (2021).

5.      Defendants' delays have forced hundreds of families to file due process complaints ("DPCs") to obtain evaluations and IEP related services.  This problem is particularly acute with respect to IEEs.  Families that request an IEE—such as a neuropsychological evaluation, speech-language evaluation, or occupational therapy evaluation—often receive no response from the individuals at their child's school, which is responsible for providing a response.  This lack of

---

[1] An IEE is an evaluation conducted by an evaluator who is not employed by the NYCDOE. Parents can obtain IEEs at their own expense or at public expense.

timely response, often for weeks or months, forces parents to file a DPC against the NYCDOE solely to obtain an evaluation.

6.     After families file these DPCs, NYCDOE offers families an opportunity for speedy resolution.  Rather than engage in the lengthy impartial hearing process, families are offered a more expedient solution.  In exchange for giving up their right to have their claims heard by an impartial arbiter, families are offered *guaranteed evaluations* through legally binding resolution agreements they enter into with the NYCDOE.  Yet, despite parents' agreements to settle or partially settle their DPC claims in exchange for promised evaluations, the NYCDOE does not abide by the timelines the NYCDOE itself negotiated in those agreements.

7.     In addition, independent providers have faced month-long delays in receiving payment for evaluations and services rendered, even after Defendants agreed to fund IEEs.  These delays in compensating IEE providers have the significant and harmful downstream effect of limiting the pool of providers who are willing to contract with the City of New York to deliver critical special education services.  When the NYCDOE fails to timely pay these independent providers for the evaluations they provide—sometimes for over a year—the providers understandably become less willing to serve students with disabilities in New York's public school system.  This downstream effect further compounds the systemic harm alleged in this Complaint, causing such providers to prefer to work with higher-income families with students who can afford to pay out-of-pocket.

8.     This issue has a particularly harmful impact on low-income students, as the majority of students with disabilities in New York's public school system are low-income and their families cannot afford to pay for IEEs out of pocket and then file a DPC to get reimbursed months or years later.  Specifically, 51% of students in the City system who are entitled to a special

3

education program and related services live in a low-income neighborhood,[2] and over 80% of students in NYCDOE schools with individualized education plans ("IEPs") were eligible for a free or reduced lunch program in 2021.[3]

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367. Plaintiffs' claims for relief under federal law arise under Section 1415 ("Procedural Safeguards") of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i), and also under 42 U.S.C. § 1983, as Defendants have acted under color of state law.  Plaintiffs also bring claims under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*. ("ADA"). Accordingly, the jurisdiction of the Court also is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).  Declaratory and injunctive relief is available under 28 U.S.C. §§ 2201 and 2202.

10.      Venue is proper under 28 U.S.C. § 1391(b) because Defendant NYCDOE's principal place of business is in this district, and a substantial part of Defendants' systemic and policy decisions giving rise to Plaintiffs' claims occurred and continue to occur in this district.

---

[2] 58% of students with an intellectual disability, 47% of students with autism, 57% students with a learning disability, and 51% of students with a speech or language impairment are from low-income neighborhoods.  *See* Cheri Fancsali, *Special Education in New York City: Understanding the Landscape*, Research Alliance for New York City Schools, NYU Steinhardt, 10 (Aug. 2019) (reporting that "[j]ust over half (51%) of students with IEPs lived in a low-income neighborhood, compared with 44% of their non-disabled peers").

[3] New York City Dep't of Educ., School-Age Special Educ. Data Report, at 19 (Nov. 1, 2021), https://infohub.nyced.org/docs/default-source/default-document-library/annual-special-education-data-report-sy21.pdf (reporting that of the 192,370 students with IEPs, 157,970 were eligible for a free or reduced-price lunch program in the 2020-2021 school year).

## THE PARTIES

11.     Initials are used throughout this Complaint to preserve the anonymity of the children and their parents, and the confidentiality of their personal information, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, and the privacy provisions of the IDEA, 20 U.S.C. § 1417(c), and of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

12.     Plaintiff D.W. is a minor child who is a public school student with a disability eligible to receive special education services.  Plaintiff D.M. is the parent of D.W. and brings this lawsuit on behalf of himself and D.W.  The family resides in New York County.  As described below, D.W.'s disability substantially impairs a major life activity and D.W. has a disability under the ADA and Section 504.

13.     Plaintiff K.W.H. is a minor child who is a public school student with a disability eligible to receive special education services.  Plaintiff K.M.S.H. is the parent of K.W.H., and brings this lawsuit on behalf of himself and K.W.H.  The family resides in Queens County.  As described below, K.W.H.'s disability substantially impairs a major life activity and K.W.H. has a disability under the ADA and Section 504.

14.     Plaintiff E.V. is a minor child who is a public school student with a disability eligible to receive special education services.  Plaintiff S.V. is the parent of E.V. and brings this lawsuit on behalf of herself and E.V.  The family resides in Bronx County.  As described below, E.V.'s disability substantially impairs a major life activity and E.V. has a disability under the ADA and Section 504.

15.     Defendant NYCDOE is the local educational agency legally constituted with administrative control over public schools in New York City, including ensuring compliance with

the IDEA.  *See* 34 C.F.R. § 303.23; N.Y. Educ. Law § 4402(1)(a).  The NYCDOE receives federal and state funds to assist in educating students with disabilities.

16.     Defendant David C. Banks is the Chancellor of the NYCDOE, and as such is entrusted with certain duties, including oversight of the NYCDOE's provision of education and services to students with disabilities.  *See* N.Y. Educ. Law § 2590-h.  Chancellor Banks is being sued in his official capacity.

## STATUTORY AND REGULATORY FRAMEWORK REGARDING EVALUATIONS AND RESOLUTION AGREEMENTS

### A. Rights Guaranteed to Students with Disabilities Under the IDEA and New York State Education Law and Education Department Regulations

17.     Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; [and] to ensure that the rights of children with disabilities and parents of such children are protected."  20 U.S.C. §§ 1400(d)(1)(A) & (B).

18.     Parallel sections of the New York Education Law and of New York State Education Department Regulations similarly guarantee students with disabilities a FAPE.  N.Y. Educ. Law § 4401 *et seq*; 8 N.Y.C.R.R. §§ 200, 201.

19.     A child with a disability is defined under the IDEA as a child "with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and who, by reason thereof, needs special education and related services."  20 U.S.C. § 1401(3)(A); *see also* N.Y. Educ. Law § 4401.  The IDEA permits the federal government to allocate funds to states and local educational agencies to carry out the objectives of the IDEA.  *See* 20 U.S.C. §§ 1412; 1413.

6

20.     The IDEA makes federal funding for states contingent on each State providing eligible children with a "free appropriate public education," commonly referred to as a "FAPE." *See* 20 U.S.C. §§ 1412(a)(1); 1413(a)(1).

21.     Specifically, in order to qualify for federal funding, states and local educational agencies must submit "a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State" provides every child within its jurisdiction a FAPE.  *See* 20 U.S.C. § 1412(a).

22.     Each eligible child is entitled to an Individualized Education Program ("IEP"), which guarantees each student certain educational support and services.  *See* 20 U.S.C. § 1414.

23.     An IEP is a written statement for each child with a disability that is developed, reviewed, and revised by an IEP team that is composed of, *inter alia*, the child's parent(s); at least one regular education teacher of the child; at least one special education teacher or provider or the child; a representative of the local educational agency.  *See* 20 U.S.C. § 1414(d)(1)(A), (B). The IEP describes the program of special education and related services that a student must receive in order to make progress in light of that child's unique circumstances and is the mechanism for ensuring that the child receives a FAPE.  *See* 20 U.S.C. §§ 1401(9)(D), (14), 1414(d).

24.     Local educational agencies must ensure that students with disabilities receive the educational support and services mandated by students' IEPs.  *See* 20 U.S.C. §§ 1412(a)(1)(A), 1414(d)(2); N.Y. Educ. Law § 4402.

25.     A child's IEP is based, in significant part, on mandated evaluations of the child. Delays in these evaluations cause an unacceptable cascading effect in the subsequent provision of special education services, which often depend on the results of the evaluations.

26.     Parents of children with disabilities have "the right to obtain an independent educational evaluation of [their] child." 34 C.F.R. § 300.502(a)(1).  Special education evaluations are a crucial component of implementing the IEPs because they facilitate the identification of areas where the student is struggling in school and the services that are required to address those needs. *See* New York City Dep't of Educ., Special Education Standard Operating Procedures Manual, at 21 (Nov. 16, 2021) ("NYC Special Education Manual").

27.     There are two categories of evaluations: (1) evaluations conducted directly by the NYCDOE (NYCDOE Evaluations); and (2) evaluations paid for by the NYCDOE but conducted by an independent agency or evaluator, referred to as "independent educational evaluations" (IEEs). 8 N.Y.C.R.R. § 200.1(z) (defining independent educational evaluation as "an individual evaluation of a student with disability or a student thought to have a disability, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the student").

28.     If a parent disagrees with an evaluation conducted by the school district, the parent has a right to obtain an IEE at "public expense."  8 N.Y.C.R.R. § 200.5(g)(1).

29.     Common IEEs include neuropsychological examinations and "related services," evaluations such as speech and language assessments, physical therapy ("PT"), occupational therapy ("OT"), and assistive technology ("AT") evaluations.  *See generally* 8 N.Y.C.R.R. § 200.4(b)(1) (the initial evaluation must include at least a physical evaluation, a psychological evaluation, a social history, an observation of the student in the student's learning environment, and other appropriate assessments or evaluations such as behavioral assessments or those necessary to ascertain physical, mental, behavioral and emotional factors contributing to suspected disabilities"); *see also* NYC Special Education Manual, at 21–30.

30.     Parents may request an IEE for their child by submitting an informal letter request or by filing a DPC with the NYCDOE requesting an impartial hearing.  *See* 8 N.Y.C.R.R. § 200.5(i)(1) ("[a] parent or school district may file a due process complaint with respect to any matter relating to the identification, evaluation or educational placement of a student with a disability . . . or the provision of a free appropriate public education"); *see also* NYC Special Education Manual, at 33, 118 (DPCs "must be submitted to the DOE's Impartial Hearing Office").

31.     A parent may file a DPC seeking an IEE or NYCDOE Evaluation, regardless of whether the parent has already submitted an informal letter request.

32.     The school district must respond to a parent's request for an IEE "without unnecessary delay" by either (1) ensuring that an IEE is provided at public expense or (2) filing a DPC notice to request a hearing to defend the sufficiency of a prior evaluation.  34 C.F.R. § 300.502(b)(2); 8 N.Y.C.R.R. § 200.5(g)(1)(iv).  Where the NYCDOE fails to timely file a DPC notice requesting a hearing to defend the sufficiency of a prior evaluation, the family's right to an IEE at public expense becomes unqualified.

33.     When a parent files a DPC, this filing automatically triggers a mandatory resolution process.  The NYCDOE must hold a resolution session within 15 days of the date of filing of a DPC.  8 N.Y.C.R.R. § 200.5(j)(2)(i); *see also* NYC Special Education Manual, at 119.

34.     During or after the resolution session, the NYCDOE and the parent may agree that in exchange for the NYCDOE's promise to provide certain agreed upon evaluations or services, the parent will withdraw all or part of their formal DPC and give up their due process right to have their formal DPC heard at an impartial hearing.  For example, the NYCDOE may agree—among other promised services—to provide an NYCDOE Evaluation or an IEE at public expense in exchange for a parent agreeing to partially or fully withdraw their DPC.

35.     This agreement is reflected in a formal legally binding resolution agreement between the parent and the NYCDOE ("Resolution Agreement").  *See* NYC Special Education Manual, at 120.  A "complete" Resolution Agreement resolves the DPC, whereas a "partial" Resolution Agreement means the DPC proceeds to a hearing on the remaining unresolved issues. *See id.*

36.     Resolution Agreements all contain a description of the evaluation, services, or other items the NYCDOE has agreed to provide or pay for, along with the cost (generally, the hourly rate it is willing to pay) for each evaluation or service.  Many Resolution Agreements, though not all, contain expected completion or implementation dates for the evaluations or other services.

37.     Per NYCDOE policy, if an IEE request is approved via Resolution Agreement, the NYCDOE will issue an Assessment Authorization ("AA-2" form).  Per NYCDOE policy, independent evaluators must complete the AA-2 form in order to receive payment.  *See id.* at 32–33.

38.     If the parent's request for an evaluation has not been resolved via informal letter request or via the Resolution Agreement process, the parent may proceed to a hearing before an Impartial Hearing Officer ("IHO").

39.     Independent evaluators conducting IEEs which were approved via a final or interim hearing order by an IHO do not have to complete the AA-2 form.  Instead, the NYCDOE's Impartial Hearing Implementation Unit is responsible for making payments to independent evaluators pursuant to the hearing order.

40.     Initial evaluations and reevaluations must be completed by the NYCDOE within 60 days of NYCDOE's receipt of parental consent to evaluate the child, or receipt of the request for reevaluation, respectively. *See* New York City Addendum, Procedural Safeguards Notice 1

(October 2020), https://www.schools.nyc.gov/docs/default-source/default-document-library/procedural-safeguards-notice-english; *see also* 20 U.S.C. § 1414(a)(1)(C)(i)(I); 8 N.Y.C.R.R. § 200.4(b). The 60-day timeline applies absent the student's parents' express agreement to extend this deadline or very narrow exceptions to the timeline (such as moving school districts during the evaluation period). *See id.*

41. After an initial evaluation, a reevaluation must be conducted at least once every three years, unless the parent and the local education agency agree that a reevaluation is unnecessary. 20 U.S.C. § 1414(a)(2); 8 N.Y.C.R.R. § 200.4(b)(4).

**B. *Rights Guaranteed to Students with Disabilities Under the ADA and Section 504***

42. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

43. Under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* § 12102(a). A physical impairment is a "physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). A mental impairment is a "mental or psychological disorder, such as an intellectual disability . . . organic brain syndrome, emotional or mental illness, and specific learning disabilities." *Id.* § 1630.2(h)(2). And lastly, a major life activity includes, but is not limited to, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i).

44.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  29 U.S.C. § 794(a).

45.     Section 504 defines a "program or activity" as the operations of "a local educational agency . . . or other school system."  *Id.* § 794(b)(2)(B).

46.     Similar to the ADA, the definition of a disability under Section 504 is a "physical or mental impairment" that "results in a substantial impediment" of a major life activity.  *Id.* § 705.

47.     As described in detail below, Plaintiffs D.W., E.V., and K.W.H. (jointly, "Minor Plaintiffs") are individuals with disabilities under the ADA and Section 504 because each has a physical or mental impairment that substantially limits a major life activity or activities.

48.     Defendant NYCDOE is a public entity that provides services to students with qualified disabilities and Defendant Banks serves as Chancellor of the New York City Department of Education.  Therefore, the ADA protects Plaintiffs from discrimination by Defendants by reason of their disabilities.

49.     Under Section 504, a recipient of federal funds operating a public education institution must provide a free appropriate education to each qualified individual with a disability in its jurisdiction.  *See* 34 C.F.R. § 104.33(a); 42 U.S.C. § 2000d-7 (acceptance of federal funds is a waiver of the Eleventh Amendment).

50.     The NYCDOE is an entity receiving federal funds that provides services for students with disabilities.  Therefore, Section 504 guarantees that Plaintiffs remain free from discrimination by reason of their disabilities in the provision of these services.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### A. Delays in Conducting NYCDOE Evaluations

*Plaintiff D.W.*

51.     D.W. is 12 years old, lives in Manhattan, identifies as Black, and is in seventh grade.  The NYCDOE has classified her as a student with a disability.

52.     D.M. is the father of D.W.

53.     D.W. has been diagnosed with a hearing impairment, intellectual disability, and attention-deficit/hyperactivity disorder ("ADHD").  As a result of this diagnosis, D.W. exhibits difficulties stemming from inattentiveness, impulsivity, and problems with self-regulation.  She is frequently unable to finish lessons due to lack of focus and inattentiveness.

54.     D.W. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

55.     D.W. received an independent neuropsychological evaluation in October 2020, and this evaluation specifically recommended that D.W. should receive OT and PT evaluations.  In addition, the evaluation recommended that D.W. should be provided assistive technology ("AT"), which would make reading and writing less stressful for her and would help her reading comprehension.

56.     D.M. grew increasingly concerned about the NYCDOE's failure to timely provide D.W. with AT, PT, and OT evaluations.  The family noted D.W. was demonstrating issues relating to grasping and navigating safely, due to toe-walking.

57.     In February 2021, D.W.'s family sent requests to NYCDOE employees via counsel for PT and OT IEEs, as well as an AT evaluation.  The NYCDOE failed to respond to these requests or provide the requested evaluations or services.

58.     As a result of these failures, plus the NYCDOE's failure to provide related compensatory services, counsel for D.M. and D.W. submitted a DPC against the NYCDOE on March 17, 2021.

59.     On May 26, 2021, D.M. and the NYCDOE entered into a Resolution Agreement ("D.W. Resolution Agreement") that constituted a partial resolution of D.W.'s claims.  The D.W. Resolution Agreement—which stated that it is "legally binding and [] enforceable in any . . . district court of the United States"—was signed by D.M. and counsel on behalf of D.M., and by NYCDOE representative Kathleen Ziegler.

60.     In the "D.W. Resolution Agreement," the NYCDOE agreed to conduct an AT evaluation and fund OT and PT IEEs "within thirty days from date of execution of this agreement"—*i.e.*, June 26, 2021.

61.     Despite agreeing to these conditions in May 2021, the NYCDOE did not complete the AT evaluation within 30 days.

62.     On August 5, 2021, ***over two months*** after the D.W. Resolution Agreement was executed, the NYCDOE completed the AT evaluation, which concluded that D.W. required an AT device—a tablet with support for word processing, word prediction, auditory feedback dictation, e-text reader, and PDF annotations.

63.     In addition, the PT and OT IEEs did not occur until August 29, 2021, and September 19, 2021, respectively—months after both the initial request for IEEs and the D.W. Resolution Agreement was executed.  This was due in part to a lack of availability of evaluators who were willing and able to perform the PT and OT evaluations.

64.     Due to the NYCDOE's delay in fulfilling its obligations under the Resolution Agreement, D.W. was without an AT device for two additional months after the NYCDOE agreed

to provide the AT evaluation.  The failure to timely provide D.W. the evaluations led to a delay in services she is entitled to as a result for her disability, and prevented her from completing her schoolwork, which caused her to fall further behind in school.  Therefore, the NYCDOE denied D.W. a FAPE and caused her to suffer substantial educational harm.

65.    In its failure to act, the NYCDOE acted with deliberate indifference to the strong likelihood that D.W.'s right to a FAPE would be violated through its delay in timely compensating the independent evaluator ("Provider 1").

**B. Delays in Payment to IEE Providers**

*Plaintiff K.W.H.*

66.    K.W.H. is nine years old, identifies as Bengali-American, lives in New York City, and is in the fourth grade.  The NYCDOE has classified him as a student with a disability.

67.    K.M.S.H. is the parent of K.W.H.  K.W.H. was born in Bangladesh but immigrated to the United States with his family when he was less than two years old.  Although K.W.H. is bilingual, his parents primarily speak Bengali.

68.    K.W.H. has been diagnosed with Autism Spectrum Disorder.  He first received this diagnosis in 2018 when he was four years old.  Specifically, K.W.H. is largely nonverbal.  He exhibits significant difficulties reading, completing tasks independently, and struggles with socializing, sharing, and communicating with same age peers.

69.    K.W.H. first received an IEP halfway through kindergarten, despite pre-school evaluations conducted months earlier indicating that K.W.H. needed special education intervention.

70.    Accordingly, K.W.H. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

71.     In order to fully participate in school, K.W.H. requires, among other things, a specialized, supportive setting and AT.  To date, K.W.H. has received some special education services.

72.     In May 2020, K.M.S.H. requested from the NYCDOE an independent bilingual (Bengali-English) neuropsychological evaluation for K.W.H, who required a Bengali-English bilingual neuropsychologist to properly assess and communicate with him to ensure he received the necessary special education and related services.  K.W.H. currently attends a state-approved non-public school.

73.     K.W.H. is required to have triennial evaluations and neuropsychological testing is recommended even more frequently.  K.W.H.'s prior formal cognitive testing was in December 2018.  His prior speech-language and OT evaluations were conducted in February 2018.

74.     For over seven months, the NYCDOE failed to provide the evaluation.  The NYCDOE never attempted to claim that K.W.H. did not require an independent evaluation, nor filed a DPC.  The failure to provide this evaluation was not appropriate.

75.     After K.W.H.'s parents grew increasingly concerned about, among other things, the NYCDOE's delay in providing K.W.H. the neuropsychological evaluation they had requested, they had to resort to filing a DPC against the NYCDOE on January 4, 2021.  In the DPC, on behalf of K.M.S.H. and K.W.H., counsel asked the IHO to find that K.W.H. was denied a FAPE for the 2018-2019, 2019-2020, and 2020-2021 school years, and requested that the NYCDOE pay for K.W.H. to receive an independent bilingual Bengali-English neuropsychological evaluation by a provider of the parent's choosing.

76.     On February 3, 2021, K.M.S.H. and the NYCDOE entered into a Resolution Agreement ("K.W.H. Resolution Agreement") that constituted a partial settlement of the claims.

The K.W.H. Resolution Agreement—which stated that it is "legally binding and [] enforceable in any . . . district court of the United States"—was signed by K.M.S.H.'s counsel on behalf of K.M.S.H., and NYCDOE representative Chani Elbaz.

77.     In exchange for K.M.S.H.'s agreement to partially settle the DPC claims, the NYCDOE agreed to pay for an independent "Bengali Neuropsychological evaluation" for K.W.H, at a cost of $6,500.

78.     The availability of Bengali-English bilingual neuropsychologists is limited.  In fact, K.W.H.'s parents are aware of only one Bengali-speaking neuropsychologist in the New York City area that could provide the necessary evaluation to K.W.H.

79.     K.W.H.'s neuropsychologist ("Provider 2") completed her evaluation on May 21, 2021, and submitted the requisite forms for payment to the NYCDOE a few days later.  The NYCDOE did not remit payment to Provider 2 until November 2021, and only after numerous follow-up efforts with the NYCDOE by K.W.H.'s counsel and the neuropsychologist.  As a result of the NYCDOE's approximately six-month delay in remitting payment to Provider 2 for her evaluation of K.W.H., Provider 2 has experienced significant stress given her other financial commitments and expenses.  While this payment delay and other payment delays she has experienced with the NYCDOE have not yet led Provider 2 to turn away NYCDOE students, Provider 2 reports that the delays have weighed on her mind in a negative fashion.

80.     From May 2020, when K.W.H. initially requested the neuropsychological evaluation, through at least February 2021, when the K.W.H. Resolution Agreement was executed, K.W.H. did not receive necessary special education services, including sufficiently frequent speech-language therapy, counseling, and an augmentative communication device.  For example, the bilingual neuropsychological evaluation recommended that K.W.H. should receive speech four

times per week, with at least half of the sessions taking place individually, rather than just three times per week, with only one individual session, which his IEP recommended at the time.  As a result of the delay in obtaining an IEE, K.W.H.'s school lacked cognitive information on his areas of strength and difficulty for months.

81.     The NYCDOE's delay in agreeing to fund and paying a provider to perform a neuropsychological evaluation for K.W.H. led to a failure to provide K.W.H. the services he was entitled to as a result of his disability, as well as crucial cognitive information regarding the nature of his disability.  The DOE often will not hold an IEP meeting until all outstanding evaluations are completed.  The delay in obtaining the evaluation also contributed to the delay in K.W.H.'s access to those services which he requires in order to participate in and benefit from the educational system was not appropriate.

82.     Therefore, the NYCDOE's delay in agreeing to fund the IEE denied K.W.H. a FAPE and caused him to suffer substantial educational harm.

83.     In addition, the NYCDOE's delay in paying Provider 2 for her IEE, despite agreeing to pay $6,500 in the K.W.H. Resolution Agreement, resulted in the denial of a FAPE to K.W.H. until November 2021 because until then, the evaluation was not provided at "public expense."

84.     The NYCDOE's delay in paying independent evaluators, like Provider 2, is detrimental to NYCDOE students with disabilities across New York City—particularly students and their families who require bilingual evaluators, because such evaluators are in short supply. By failing to timely pay independent evaluators for conducting IEEs, the NYCDOE's conduct significantly narrows the pool of evaluators who are able to provide IEEs—which the NYCDOE has agreed to pay in Resolutions Agreements.

*Plaintiff E.V.*

85.     E.V. is 16 years old, lives in the Bronx, and is currently in the 11th grade.  The NYCDOE has classified him as a student with a disability.

86.     S.V. is the parent of E.V.

87.     E.V. has been diagnosed with a speech and language disorder, specific learning disorder, childhood lead exposure, and generalized anxiety disorder.  He received the first of these diagnoses when he was just 18 months old.  As a result of his disabilities, E.V. has difficulty speaking, communicating, reading, writing, and learning.  He has struggled academically for years.  For example, according to testing from December 2019, when E.V. was in eighth grade, he was reading at a second grade level.

88.     Specifically, E.V. struggles mentally and emotionally because he is unable to keep up and compete in school, and he often shuts downs completely in school due to these struggles.  E.V. exhibits difficulties in large group settings, such as the classroom.  He also struggles with concept comprehension and completion of classwork.

89.     E.V. first received an IEP in pre-school, and currently has an IEP.

90.     Accordingly, E.V. is a child with a disability within the meaning of the IDEA and a qualified individual with a disability within the meaning of Section 504 and the ADA.

91.     In order to fully participate in school, E.V. requires speech therapy, counseling, one-on-one tutoring in multiple subjects, including math, and testing accommodations, as well as an appropriate placement.  E.V. has received certain services to date, including some speech therapy, but has been denied other necessary and appropriate services.

92.     E.V.'s mother was growing increasingly concerned about, among other things, E.V.'s struggles with speech and that his IEP did not provide adequate speech-related services.  As

a result, the family filed a DPC against the NYCDOE on October 20, 2020, which requested, among other things, that the IHO order the NYCDOE to provide E.V. with an independent speech-language evaluation.

93.     On February 11, 2021, S.V. and the NYCDOE entered into a Resolution Agreement ("E.V. Resolution Agreement") that constituted a partial settlement of S.V.'s claims.  The E.V. Resolution Agreement—which stated that it is "legally binding and [] enforceable in any . . .. district court of the United States"—was signed by S.V.'s counsel on behalf of parent S.V., and NYCDOE representative Brent Sackris.

94.     In the E.V. Resolution Agreement, the NYCDOE agreed to pay for an independent speech evaluation in an amount not exceeding $2,100 "[u]pon receipt of a comprehensive evaluation and invoice from a licensed clinician."  The E.V. Resolution Agreement provided that "the dates for the evaluation must be set within thirty days (30) of signing of this resolution agreement."  The NYCDOE also agreed to implement a new IEP and provide 600 tutoring hours.

95.     Despite the NYCDOE agreeing in the E.V. Resolution Agreement to provide a speech IEE at an expense of $2,100, and providing that the evaluation dates would be set within 30 days (*i.e.*, March 11, 2021), the speech IEE dates were not set until after March 11, 2021.  The speech IEE did not occur until April 29, 2021.

96.     Counsel for E.V. and S.V. contacted an independent speech-language evaluator ("Provider 3") in early March 2021, but Provider 3 did not agree to accept the case for a month because of the NYCDOE's systemic delays in providing payment for IEE evaluations that Provider 3 had previously conducted of  at least one other student.

97.     From the date S.V. and E.V.'s counsel submitted its DPC in October 2020 through at least February 2021, when the E.V. Resolution Agreement was executed, E.V. did not receive

necessary special education services, including more supportive speech-language therapy, as a result of the NYCDOE's failure to provide an IEE.  (For instance, the IEE speech evaluation recommended that E.V. should receive speech services for three hours per week, with the two of the hours taking place in the form of individual speech sessions, rather than the 80 minutes per week, entirely in a group setting, that his IEP recommended at the time.)  As a result of this delay, E.V.'s school lacked access to detailed information of E.V.'s language functioning skills and speech-language delays.  E.V. fell further behind in his ability to express himself, complete assignments, and engage in school.

98.     The NYCDOE's delay in agreeing to fund and paying a provider to perform an evaluation for E.V. led to a failure to provide E.V. with the services he was entitled to as a result of his disability, and those services which he requires in order to participate in and benefit from the educational system was not appropriate.

99.     Therefore, the NYCDOE's delay in ensuring the providing the IEE was timely provided at public expense denied E.V. a FAPE and caused him to fall further behind grade level with reading.

100.    In addition, the NYCDOE denied E.V. a FAPE for a least one additional month. Even though the E.V. Resolution Agreement stated that a date for the IEE was to be scheduled within 30 days, the IEE was not scheduled until more than 30 days later, in violation of the E.V. Resolution Agreement.  This delay in scheduling the IEE was a direct result of the NYCDOE's failure to timely pay Provider 3 for a prior IEE and caused E.V. substantial educational harm.

101.    In its failure to act, the NYCDOE acted with deliberate indifference to the strong likelihood that E.V.'s right to a free appropriate public education would be violated through its delay in timely compensating Provider 3.

102.    The NYCDOE's delay in paying independent evaluators, like Provider 3, is detrimental to NYCDOE students with disabilities across New York City.  By failing to timely pay independent evaluators for conducting IEEs, the NYCDOE's conduct significantly narrows the pool of evaluators who are able to provide IEEs—which the NYCDOE has agreed to pay in Resolution Agreements.

### THE DOWNSTREAM IMPACT OF FAILURE TO PAY EVALUATORS

103.    As a result of the NYCDOE's systemic payment delays, IEE providers have delayed or refused to provide services to NYCDOE students.

104.    The NYCDOE's delays in paying independent providers and conducting evaluations directly cause other harmful delays with respect to the special education services being provided to the families, as they often depend on evaluations.

105.    Since at least 2018, the systemic delays in the NYCDOE's payments to providers have substantially worsened.

106.    For example, one neuropsychologist and solo practitioner (Provider 1) who primarily contracts with the NYCDOE was at one point owed over $50,000 for past IEEs performed, and waited approximately six months to a year for the NYCDOE to remit payment on these services.  The only source of revenue for Provider 1's practice is conducting IEEs.

107.    These extended payment delays have endangered the viability of Provider 1's practice and has led her to doubt whether she can continue to serve low-income students with disabilities from NYCDOE schools.

108.    A service provider specializing in one-on-one tutoring ("Provider 4") has experienced delayed payments for several months at a time for services provided to disabled NYCDOE students.

109.    The NYCDOE's delay or failure to pay Provider 4 has left Provider 4 with no choice but temporarily and potentially permanently stop providing tutoring services to disabled students who are unable to pay up front, out-of-pocket.

110.    Another neuropsychologist ("Provider 5") has waited over 16 months to receive payment from the NYCDOE for completed IEEs.

111.    Provider 5 is reluctant to accept IEE referrals from the NYCDOE in light of these payment delays.

112.    As a result of the payment delays, NYCDOE students who are entitled to IEEs, and to whom the NYCDOE has promised to fund IEEs, are unable to find evaluators willing to accept them and perform their evaluations.  Thus, NYCDOE students with disabilities are prevented from timely receiving the IEEs they are entitled to, and their educators are not given the information needed to provide them with necessary, appropriate special education services.

113.    In October 2021, counsel for Plaintiffs from Mobilization for Justice ("MFJ") and Simpson Thacher & Bartlett LLP ("STB") sent a letter to representatives of the NYCDOE outlining the claims identified in this action, including the harms students face when they are not timely provided evaluations and independent evaluators are not timely paid for their services.  The letter explained that "students with disabilities face unacceptably long delays in obtaining [IEEs], DOE evaluations, and special education services" and that "independent providers have faced months-long delays in receiving payment for evaluations and services rendered."  The letter provided specific examples of students and providers that have suffered from these delays and invited the NYCDOE to work with MFJ and STB to devise a solution to resolve these issues. Unfortunately, despite multiple efforts at constructive engagement and dialogue by counsel for Plaintiffs to resolve the issues identified in the October 2021 letter, as well as subsequent

correspondence, the NYCDOE has failed to act in a manner consistent with its statutory and other legal obligations.

## **CLASS ALLEGATIONS**

114.    The named Plaintiffs bring this action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and as representatives of two proposed classes of students with disabilities in New York City.

115.    Plaintiffs D.W. and D.M. bring this action on behalf of a proposed class consisting of:

> All individuals who have submitted or will submit, and the children with disabilities on whose behalf they have filed or will file, due process complaints with the New York City Department of Education requesting NYCDOE Evaluations, and whose NYCDOE Evaluations have not been or will not be timely provided under the applicable federal and state law and regulations since the 2020-2021 school years ("NYCDOE Evaluation Class").

116.    Plaintiffs E.V, S.V., K.W.H., and K.M.S.H bring this action on behalf of a proposed class consisting of:

> All individuals who have submitted or will submit, and the children with disabilities on whose behalf they have filed or will file, due process complaints with the New York City Department of Education requesting IEEs, and whose IEEs have not been or will not be timely provided at public expense under the applicable federal and state law and regulations since the 2020-2021 school years ("IEE Class").

117.    Both proposed classes are so numerous that joinder of all class members in this action would be impracticable.  Upon information and belief, there are thousands of students in the classes.  As of 2020-21, there were 192,370 students with IEPs, only 86.7% of whom were reported to be receiving their IEP services in full.[4]  Based on these figures alone, it is reasonable

---

[4] New York City Dep't of Educ., *supra* n.3, at 30.

to conclude that thousands of students with disabilities since the 2020-2021 school years have experienced IEE or NYCDOE evaluation delays.

118.    Defendants' violations constitute a general and systemic failure to provide children with disabilities and their families the rights guaranteed by law and cannot be resolved by resorting to the administrative hearing process.

119.    The named Plaintiffs will adequately and fairly protect the interests of all members of the proposed class because they have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

120.    The named Plaintiffs are represented by MFJ and STB.  Attorneys at both firms are experienced in complex federal litigation and class action litigation.

121.    The claims of the named Plaintiffs are typical of the claims of the classes because they have suffered, and are suffering, as a result of Defendants' systemic delays in paying special education service providers, in the same manner as other members of the proposed classes.

122.    Members of each of the two classes present common questions of law and fact and these questions predominate over any individual questions.

123.    The common questions include, but are not limited to:

i.      whether Defendants' systematic failure to ensure Plaintiffs receive a timely response to requests for IEEs violates the following statutes and their implementing regulations:

a.   IDEA

b.   New York Education Law

c.   ADA

d.   Section 504

ii.     whether Defendants' systemic failure to ensure payment for the provision of IEEs at public expense to Plaintiffs within the time period indicated in Resolution Agreements constitutes a breach of contract;

iii.    whether Defendants' systematic failure to ensure payment for the provision of IEEs at public expense violates the following statutes and their implementing regulations:

      a.   IDEA

      b.   New York Education Law

      c.   ADA

      d.   Section 504

iv.     whether Defendants' systemic failure to ensure the provision of NYCDOE Evaluations within the time period indicated in Resolution Agreements constitutes a breach of contract;

v.      whether Defendants' systematic failure to timely provide NYCDOE Evaluations to Plaintiffs violates the following statutes and their implementing regulations:

      a.   IDEA

      b.   New York Education Law

      c.   ADA

      d.   Section 504

124.    Defendants' failures have harmed all members of the proposed classes, as described further above, thereby making appropriate final declaratory and injunctive relief with respect to the classes as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**(Violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, and implementing regulations)**

### *Against All Defendants*

125.    Plaintiffs repeat and reallege every Paragraph above as if fully set forth herein.

126.    As the local educational agency, the NYCDOE is legally responsible for complying with the IDEA within New York City.

127.    Defendants denied, and are denying, the rights of Plaintiffs and the putative classes by failing to ensure that NYCDOE Evaluations and IEEs are provided without unreasonable delay, thereby depriving Plaintiffs and the putative classes of a FAPE.

128.    Further, Defendants have denied, and are denying, the rights of Plaintiffs and the putative IEE Class by failing to timely compensate evaluators whose evaluations are necessary for Plaintiffs, thereby preventing evaluations from being provided and impairing the provision of special education services.  Defendants therefore are preventing Plaintiffs and the putative IEE Class from receiving the FAPE to which they are entitled under the law.

129.    Accordingly, Defendants have violated Plaintiffs' rights under 20 U.S.C. § 1415 and 34 C.F.R. § 300.515(a) and deprived Plaintiffs of a FAPE under 20 U.S.C. § 1400 *et seq*.

130.    Plaintiffs' rights under the IDEA are enforceable under 42 U.S.C. § 1983, as Defendant Banks has acted under color of state law, as well as under 20 U.S.C. § 1415(i) and the Court's equitable powers.

131.    As a result of these violations, Plaintiffs are entitled to injunctive relief and declaratory relief, and to costs and attorneys' fees.  *See* 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION
**(Violation of New York Education Law § 4401 *et seq*. and implementing regulations)**

### *Against All Defendants*

132.     Plaintiffs repeat and reallege every Paragraph above as if fully set forth herein.

133.     New York Education Law requires that school districts provide students with a FAPE, compliant with the IDEA.

134.     The Minor Plaintiffs are qualified individuals with disabilities because each is entitled to attend public schools pursuant to section 3202 of the Education Law and because of mental, physical or emotional reasons, has been identified as having a disability and requires special services and programs approved by the department.  8 N.Y.C.R.R. § 200.1(zz).

135.     Defendants denied, and are denying, the rights of Plaintiffs and the putative classes by failing to ensure that NYCDOE Evaluations and IEEs are provided without unreasonable delay, thereby depriving Plaintiffs and the putative class of a FAPE.

136.     Further, Defendants have denied, and are denying, the rights of Plaintiffs and the putative IEE Class by failing to timely compensate evaluators whose evaluations are necessary for Plaintiffs, thereby preventing evaluations from being provided and impairing the provision of special education services.  Defendants therefore are preventing Plaintiffs and the putative IEE Class from receiving the FAPE to which they are entitled under the law.

137.     Accordingly, Defendants have violated Plaintiffs' rights under 8 N.Y.C.R.R. §§ 200.5(j)(3)(viii) and (g)(1) and deprived them of a FAPE under the New York Education Law.

138.     Plaintiffs' rights under the New York Education Law are enforceable under 8 N.Y.C.R.R. § 200.5(k)(3), as well as under the Court's equitable powers.

139.     As a result of these violations, Plaintiffs are entitled to injunctive and declaratory relief, and to costs and attorneys' fees.

### THIRD CAUSE OF ACTION
**(Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a))**

***Against All Defendants***

140.    Plaintiffs repeat and reallege every Paragraph above as if fully set forth herein.

141.    The Minor Plaintiffs are individuals with disabilities under the Rehabilitation Act because each one has a physical or mental impairment that results in a substantial impediment of a major life activity.  29 U.S.C. § 705(20)(B).

142.    The Minor Plaintiffs are all qualified for the program at issue because, under Section 504, schools are required to provide a FAPE through special education and related services.  *See, e.g.*, 34 C.F.R. § 104.33.

143.    Defendant NYCDOE is subject to Section 504 because the NYCDOE receives federal financial assistance.

144.    Defendants have denied, and are denying, the rights of Plaintiffs and the putative IEE Class by failing to timely compensate independent evaluators whose services are necessary for Plaintiffs, thereby preventing IEEs from being provided.  In so doing, Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against the Minor Plaintiffs and the putative IEE Class on the basis of their disabilities.

145.    In addition, Defendants have denied, and are denying, the rights of Plaintiffs and the putative classes by failing to ensure that NYCDOE Evaluations and IEEs are timely provided to students.  In so doing, Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against the Minor Plaintiffs and the putative classes on the basis of their disabilities.

146.    Defendants have been on notice of the systemic unlawful delays in payments to independent education evaluation and special education service providers and the systemic

unlawful delays in providing NYCDOE Evaluations, and the numerous causes of those delays, but have done nothing to effectively remedy the delays.  Defendants' delays, including in compensating service providers for services rendered, substantially delays the evaluation processes to which students with disabilities are entitled, and causes discrimination against the students because they are unable to receive the free appropriate public education that their classmates without disabilities receive.

147.    In failing to effectively address its inability to timely compensate special education service providers and delays in providing NYCDOE evaluations, Defendants have acted in bad faith and exercised gross misjudgment, and have acted with deliberate or reckless indifference to the Minor Plaintiffs' federally protected rights.

148.    The Minor Plaintiffs' rights under Section 504 are enforceable under 29 U.S.C. § 794a, as well as the Court's equitable powers.

149.    As a result of these violations, Plaintiffs are entitled to injunctive relief and declaratory relief, and to costs and attorneys' fees.  29 U.S.C. § 794a.

## FOURTH CAUSE OF ACTION

**(Violation of the ADA, 42 U.S.C. § 12131 *et seq*., and implementing regulations)**

### *Against All Defendants*

150.    Plaintiffs repeat and reallege every Paragraph above as if fully set forth herein.

151.    The Minor Plaintiffs are qualified individuals with disabilities under the ADA because each has a physical or mental impairment that substantially impairs a major life activity. 42 U.S.C. § 12102(1).  The Minor Plaintiffs and the putative class are entitled to a FAPE.

152.    Defendants have denied, and are denying, the rights of Plaintiffs and the putative IEE Class by failing to timely compensate independent evaluators whose services are necessary

for Plaintiffs, thereby preventing IEEs from being provided.  In so doing, Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against the Minor Plaintiffs and the putative IEE Class on the basis of their disabilities.

153.    In addition, Defendants have denied, and are denying, the rights of Plaintiffs and the putative classes by failing to ensure that NYCDOE Evaluations and IEEs are timely provided to students.  In so doing, Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against the Minor Plaintiffs and the putative classes on the basis of their disabilities.

154.    Defendants have been on notice of the systemic unlawful delays in payments to independent education evaluators and special education service providers and the systemic unlawful delays in providing NYCDOE Evaluations, and the numerous causes of those delays, but have done nothing to effectively remedy the delays.  Defendants' delays, including in compensating service providers for services rendered, substantially delays the evaluation processes to which students with disabilities are entitled, and causes discrimination against the students because they are unable to receive the free appropriate public education that their classmates without disabilities receive.

155.    In failing to effectively address its inability to timely compensate special education service providers and timely provide NYCDOE Evaluations, Defendants have acted in bad faith and exercised gross misjudgment and have acted with deliberate or reckless indifference to the Minor Plaintiffs' federally protected rights.

156.    The Minor Plaintiffs' rights under the ADA are enforceable under 42 U.S.C. § 12133, as well as the Court's equitable powers.

157.     As a result of these violations, Plaintiffs are entitled to injunctive relief and declaratory relief, and to costs and attorneys' fees.  42 U.S.C. § 12205.

## FIFTH CAUSE OF ACTION
### (Breach Of Contract)

### *Against Defendant NYCDOE*

158.     Plaintiffs repeat and reallege every Paragraph above as if fully set forth herein.

159.     Plaintiffs and Defendant NYCDOE entered into resolution agreements.

160.     Under applicable federal and New York State law, these resolution agreements constitute binding contracts enforceable in any state court of competent jurisdiction or in a district court of the United States.  *See* 20 U.S.C. § 1415(f)(1)(B)(iii); 8 N.Y.C.R.R. § 200.5(h)(1)(vi).

161.     The Resolution Agreements involved a bargained-for exchange between the parties whereby Plaintiffs agreed to settle part or all of their DPCs in exchange for the NYCDOE's promise to provide Plaintiffs with, *inter alia*, provision of NYCDOE Evaluations and IEEs, which are essential components of the students' right to a FAPE.

162.     The Resolution Agreements included a contractual provision requiring the NYCDOE to either (1) timely provide Plaintiffs with an NYCDOE Evaluation; or (2) compensate independent service providers in connection with their provision of IEEs to Plaintiffs.

163.     Plaintiffs have adequately performed under the binding Resolution Agreements.

164.     Defendant NYCDOE has breached the binding Resolution Agreements with Plaintiffs by (1) failing to provide Plaintiffs with NYCDOE Evaluations without unreasonable delay, and within the time period set forth in the Resolution Agreements; (2) failing to ensure the provision of IEEs without unreasonable delays, due to the NYCDOE's failure to timely pay evaluators in connection with such independent evaluations.

165.    As a result, Plaintiffs have been denied FAPEs, and have been prevented from obtaining timely independent evaluations.

166.    Accordingly, Defendants have materially breached their Resolution Agreements with Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court:

(a) Certify that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

(b) Declare that Defendants' conduct has violated: (1) the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. and its implementing regulations; (2) the New York Education Law § 4401 *et seq*. and its implementing regulations; (3) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and (4) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*.;

(c) Issue a preliminary injunction ordering Defendants to immediately cease engaging in the violations of, and directing them to comply with, the IDEA and its implementing regulations, the New York Education Law § 4401 *et seq*. and its implementing regulations, Section 504, and the ADA; and

i.   Ordering Defendants to identify all class members

(d) Enter judgment:

i.   Requiring Defendants to propose a plan, subject to Plaintiffs' counsel and the Court's approval.  The plan shall include (a) the policies and procedures that Defendants will implement to ensure that Defendants come into full

compliance with the Court's order; (b) the persons directly accountable, respectively, ensuring the successful implementation of each provision of the plan; (c) the additional resources that will be allocated and disbursed to bring Defendants into full compliance with the Court's Order; (d) milestones and target dates used to hold Defendants accountable to this Court; (e) notices to parents who have obtained Resolution Agreements or agreements to provide independent evaluations sufficient to inform them of their rights to timely enforcement; and (f) procedures for addressing emergency situations;

   ii. Ordering Defendants to submit monthly compliance reports to the Court, with copies to Plaintiffs' counsel;

  iii. Ordering compensatory education and other equitable relief for Plaintiffs and members of the putative classes; and

  iv. Retaining jurisdiction of this action for all purposes, including entry of such additional orders as may be necessary or proper;

(e) Appoint a special master or independent monitor to oversee and monitor Defendants' implementation of the plan and compliance with the requirements of the Court's Order;

(f) Award to Plaintiffs disbursements, costs, and attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I); 29 U.S.C. § 794a; 42 U.S.C. § 1988; and 42 U.S.C. § 12205; and

(g) Grant such other and further relief as the Court may deem just and proper.

Dated:  April 17, 2023
        New York, New York

Respectfully submitted,

By: */s/ Michael J. Osnato*
        Michael J. Osnato

SIMPSON THACHER & BARTLETT LLP
Michael J. Osnato
Jonathan S. Kaplan
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
E-mail: Michael.Osnato@stblaw.com
        Jonathan.Kaplan@stblaw.com

Sarah H. Brim (*Pro Hac Vice* forthcoming)
2475 Hanover Street
Palo Alto, CA 94306
Telephone: (650) 251-5000
Facsimile: (650) 251-5002
E-mail: Sarah.Brim@stblaw.com


By: */s/ Michael N. Litrownik*
        Michael N. Litrownik

MOBILIZATION FOR JUSTICE, INC.
Michael N. Litrownik
Belinda Luu
Andrew Gerst

100 William Street, 6th Fl.
New York, NY 10038
Telephone: (212) 417-3858
Facsimile: (212) 417-3891
Email: mlitrownik@mfjlegal.org


*Attorneys for Plaintiffs and the Proposed Class*